UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------

INTAZ SAHEBDIN,

                         Plaintiff,                     **MEMORANDUM & ORDER**
                                                           21-CV-2956 (MKB)

               v.

ANGELA KHELAWAN, A&N WEST INDIAN
AMERICAN GROCERY, *a/k/a* A&N FISH
MARKET, and YADRAM HARRY,

                            Defendants.

-----------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

        Plaintiff Intaz Sahebdin commenced the above-captioned action on May 25, 2021,

against Defendants Angela Khelawan, A&N West Indian American Grocery, doing business as

A&N Fish Market, and Yadram Harry, alleging that Defendants subjected him to exploitative

work conditions, refused to pay him wages, and trafficked him to Suriname, in violation of the

Trafficking Victims Protection Reauthorization Act (the "TVPRA"), 18 U.S.C. §§ 1584, 1589,

1590 *et. seq*. and the Thirteenth Amendment of the United States Constitution.  (Compl. ¶¶ 2–3,

61–87.)  Plaintiff also alleges that Defendants are liable under theories of quantum meruit, unjust

enrichment, fraud and constructive fraud, false imprisonment, intentional infliction of emotional

distress, and civil conspiracy.  (*Id*. ¶¶ 88–127.)

        Defendants move to dismiss all claims pursuant to Rules 12(b)(1) and 12(b)(6) of the

Federal Rules of Civil Procedure and Plaintiff opposes the motion in part.[1]  For the reasons

---

[1] (Defs.' Mot. to Dismiss ("Defs.' Mot."), Docket Entry No. 13; Defs.' Mem. in Supp. of
Defs.' Mot. to Dismiss ("Defs.' Mem."), Docket Entry No. 14; Pl.'s Mem. in Opp'n to Defs.'
Mot. to Dismiss ("Pl.'s Opp'n"), Docket Entry No. 16.)

explained below, the Court grants Defendants' motion in part and denies it in part. The Court also grants Plaintiff leave to file an amended complaint within thirty days.

## I. Background

The Court assumes the truth of the factual allegations in the Complaint for the purpose of deciding Defendants' motion.

### a. Factual background

#### i. Events that occurred in the United States before 2013.

Plaintiff is a citizen of Suriname and came to the United States in 2003 seeking employment. (Compl. ¶ 12.) Plaintiff currently resides in Queens, New York as a permanent resident. (*Id*. ¶ 6.) Not long after his arrival in 2003, Plaintiff found a job at A&N Fish Market, located in Queens, where he weighed, cut, and prepared fish and other seafood for customers. (*Id*. ¶¶ 9,10, 13; Pl.'s Opp'n 2.) Khelawan and Harry ("Individual Defendants") owned and operated A&N Fish Market and agreed to pay Plaintiff $240 a week in wages. (*Id*. ¶¶ 10, 14.) Plaintiff worked twelve to fifteen hours a day for seven days for the first three months of his employment. (*Id*. ¶ 15.) Plaintiff's job duties included throwing out the trash, cleaning the store, stocking shelves, and unloading produce. (*Id*. ¶ 16.) At times, Individual Defendants told Plaintiff to clean the store at night after they locked up. (*Id*. ¶ 17.) "Individual [D]efendants would close the fish market for the day[and] lock the outside door, leaving [P]laintiff with no means of exit and literally imprisoned." (*Id*. ¶ 18.) After the first three months of Plaintiff's employment, Individual Defendants stopped paying him; Plaintiff lived on tips he received from customers. (*Id*. ¶¶ 20–21.)

Six months into Plaintiff's employment, Individual Defendants offered Plaintiff accommodations in in the basement of the A&N Fish Market rent-free.[2]  (*Id*. ¶ 22.)  The basement room was a large and windowless boiler room with a freezer and a toilet.  (*Id*. ¶ 23.)  Plaintiff slept on top of milk crates and used a bucket to bathe.  (*Id*. ¶ 24.)  When Plaintiff inquired about his wages, Individual Defendants told him that they could not pay him because they were saving up to buy him an apartment.[3]  (*Id*. ¶ 27.)  On one occasion, "sometime prior to 2013, tenants [who] owed rent to [I]ndividual [D]efendants were beaten up[,] and after that Plaintiff got scared and stopped asking [them] for his wages."  (*Id*. ¶ 31.)  The treatment of the other tenant scared Plaintiff and he stopped asking Defendants for his wages.  (*Id*.)  Defendants also kept possession of Plaintiff's legal documents, including his passport, green card, and social security card.  (*Id*. ¶¶ 25, 30.)

### i.   Events in Suriname from 2013–2016

In 2013, Individual Defendants told Plaintiff they opened a fishing business and store in Suriname, named Goldfish Import & Export, that would operate similarly to A&N Fish Market.  (*Id*. ¶ 33.)  Individual Defendants offered to provide Plaintiff with lodging if he went to Suriname to manage the store.  (Compl. ¶ 34.)  Between 2013 and 2016, Plaintiff managed Goldfish Import & Export in Suriname and Individual Defendants provided him with a rented house/apartment to live in while he worked.  (Compl. ¶¶ 34, 36.)  Individual Defendants required Plaintiff to sign documents in Dutch that he did not know the significance of and Plaintiff

---

[2]  Plaintiff previously lived with his grandmother, but was no longer able to live with his grandmother because the smell of fish permeated his clothes.  (Compl. ¶ 22.)

[3]  Khelawan later acknowledged that she owed Plaintiff approximately $200,000 from between 2003–2012.  (*Id*. ¶ 29.)

executed the documents despite his illiteracy, having received no formal education since the age of ten.  (Compl. ¶ 35.)

In 2015, Khelawan was travelling to the United States and was stopped at John F. Kennedy Airport by Transportation Security Administration ("TSA") agents because she was carrying Plaintiff's passport.  (Compl. ¶ 37.)  When the TSA agents questioned her about the passport, she called Plaintiff and told him to say she had permission to have his passport.  (Compl. ¶ 38.)  Around the same time, Plaintiff was approached by the Suriname government and was told that he incurred approximately $100,000 in debt associated with Goldfish Import & Export, including taxes, rental arrears and various other debts.  (Compl. ¶¶ 39, 43.)  Plaintiff learned that the Dutch documents that Khelawan made him sign were incorporation documents for Goldfish Import & Export and on the documents Plaintiff was named as the owner and person responsible for the debts and liabilities of the business.  (*Id*. ¶ 40.)  Plaintiff also discovered that he had incurred debts for two businesses that were owned and operated by Individual Defendants in Suriname.  (*Id*. ¶ 42.)  Khelawan abandoned Plaintiff in Suriname in September of 2016, leaving him without his passport and with no money.  (*Id*. ¶ 44.)  After Khelawan's departure, Plaintiff made money by catching and selling crabs until he could acquire a temporary passport to return to the United States.  (*Id*. ¶ 46.)

### ii.  Events in the United States after August of 2017

Using his temporary passport, Plaintiff returned to the United States in August of 2017 with the money he earned from catching and selling crabs.  (*Id*. ¶ 47.)  Plaintiff went to Individual Defendants' home upon his return and stayed at their apartment for one night and the following day the Individual Defendants told Plaintiff that they rented a room for him.  (*Id*. ¶ 48–49.)  On August 25, 2017, Individual Defendants told Plaintiff he owed them money and had thirty days to pay it back or they would have his hands and feet broken.  (*Id*. ¶ 50.)  Upon

4

receiving physical and verbal threats, Plaintiff left the apartment and went back to living with his grandmother.  (*Id*. ¶ 51.)  Plaintiff later found employment at another fish market where he was paid wages.  (*Id*. ¶ 52.)

In 2021, Plaintiff found out that the Internal Revenue Service (the "IRS") sent him a notice stating that he owed sales tax since 2008 for a business called Liberty Fish & Meat, located at the same premises as A&N Fish Market.  (*Id*. ¶¶ 53, 55.)  Plaintiff never opened, owned, operated or managed this business.  (*Id*. ¶ 54.)  Individual Defendants used Plaintiff's private information to open Liberty Fish & Meat under Plaintiff's name, incurring debt and leaving Plaintiff with the debt.  (*Id*. ¶ 57.)  When Plaintiff reached out to Individual Defendants about the business, they threatened him with bodily injury.  (*Id*. ¶ 58.)

### b.  Procedural background

On May 25, 2021, Plaintiff filed a Complaint alleging violations of the TVPRA, 18 U.S.C. §§ 1584, 1589, 1590, *et seq.*, and the Thirteenth Amendment of the United States Constitution.  (*See* Compl.)  Plaintiff alleges that Defendants "knowingly recruited, transported, and harbored [] Plaintiff so as to obtain his labor and services by threats of serious harm, scheme or pattern of behavior and/or abuse of legal process . . . while he was employed at A&N Fish Market between 2003–2013 and later on between 2013–2017 when he was employed at Goldfish Import & Export in Suriname."  (*Id*. ¶ 62, 69, 72.)  In addition, Plaintiff alleges the Defendants "forced [him] to work for them under threats of psychological and legal coercion manifested in the confiscation of his passport and threats of harm that would result should Plaintiff ask for his passport, his wages owed or the debts incurred in Suriname under his name or the back taxes owed to the [IRS]" and "Defendants caused [him] to have and to believe he had no way of avoiding continued service or confinement in violation of the Thirteenth Amendment's

prohibition on involuntary servitude." (*Id.* ¶¶ 80–81.) Plaintiff also asserts common law claims for quantum meruit, unjust enrichment, fraud and constructive fraud, false imprisonment, intentional infliction of emotional distress, and civil conspiracy. (*Id.* ¶¶ 88–127.)

On September 24, 2021, Defendants moved to dismiss the Complaint arguing that Plaintiff's claims are barred by the applicable statutes of limitation. (*See* Defs.' Mot.; Defs.' Mem.; Defs.' Reply.) In addition, Defendants argue that Plaintiff (1) fails to plead actionable forced labor and trafficking claims, (Defs.' Mem. 8–11); (2) cannot assert claims relating to his employment in Suriname under the Thirteenth Amendment or for quantum meruit, unjust enrichment, fraud and false imprisonment, (*id.* at 13–17, 20); (3) fails to plead his fraud claims with specificity, (*id.* at 18–19); (4) fails to assert that he was confined to support his false imprisonment claim, (*id.* at 20); (5) fails to plead facts showing that Defendants conduct was outrageous and extreme or that Defendants intended to cause severe emotional distress, to support his infliction of emotional distress claim (*id.* at 21–22); and (6) fails to assert how his civil conspiracy claim is connected to an actionable tort, (*id.* at 23). Plaintiff opposes the motion. (Pl.'s Opp'n.)

## II.   Discussion

### a.   Standards of review

#### i.   12(b)(1)

A district court may dismiss an action for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure when the court "lacks the statutory or constitutional power to adjudicate it." *Huntress v. United States*, 810 F. App'x 74, 75 (2d Cir. 2020) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)); *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.À.R.L.*, 790 F.3d 411, 416–17 (2d Cir. 2015) (quoting

*Makarova*, 201 F.3d at 113); *Shabaj v. Holder*, 718 F.3d 48, 50 (2d Cir. 2013) (per curiam)

(quoting *Aurecchione v. Schoolman Transp. Sys., Inc*., 426 F.3d 635, 638 (2d Cir. 2005)).

"'[C]ourt[s] must take all facts alleged in the complaint as true and draw all reasonable

inferences in favor of [the] plaintiff,' but 'jurisdiction must be shown affirmatively, and that

showing is not made by drawing from the pleadings inferences favorable to the party asserting

it.'" *Morrison v. Nat'l Austl. Bank Ltd*., 547 F.3d 167, 170 (2d Cir. 2008) (citation omitted) (first

quoting *Nat. Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006); and then quoting

*APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003)), *aff'd*, 561 U.S. 247 (2010).  Ultimately, "the

party asserting subject matter jurisdiction 'has the burden of proving by a preponderance of the

evidence that it exists.'" *Tandon v. Captain's Cove Marina of Bridgeport, Inc*., 752 F.3d 239,

243 (2d Cir. 2014) (quoting *Makarova*, 201 F.3d at 113); *see also Suarez v. Mosaic Sales Sols.*

*US Operating Co*., 720 F. App'x 52, 53 (2d Cir. 2018) (citing *Morrison*, 547 F.3d at 170);

*Clayton v. United States*, No. 18-CV-5867, 2020 WL 1545542, at *3 (E.D.N.Y. Mar. 31, 2020)

(quoting *Tandon*, 752 F.3d at 243); *F.D.I.C. v. Bank of N.Y. Mellon*, 369 F. Supp. 3d 547, 552

(S.D.N.Y. 2019) (quoting *Tandon*, 752 F.3d at 243).

### ii.  12(b)(6)

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil

Procedure, a court must construe the complaint liberally, "accepting all factual allegations

therein as true and drawing all reasonable inferences in the plaintiffs' favor." *Sacerdote v. N.Y.*

*Univ.*, 9 F.4th 95, 106–107 (2d Cir. 2021); *Vaughn v. Phoenix House N.Y. Inc.*, 957 F.3d 141,

145 (2d Cir. 2020).  A complaint must plead "enough facts to state a claim to relief that is

plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Bacon v. Phelps*,

961 F.3d 533, 540 (2d Cir. 2020) (quoting *Twombly*, 550 U.S. at 570).  A claim is plausible

"when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *Cavello Bay Reinsurance Ltd. v. Shubin Stein*, 986 F.3d 161, 165 (2d Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678). Although all allegations contained in the Amended Complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678; *Vaughn*, 957 F.3d at 145 (same).

### b. TVPRA claims

#### i. Plaintiff's TVPRA claims are timely

Defendants argue that Plaintiff's TVPRA claims arising prior to May 25, 2011 are untimely because the ten-year limitations period expired prior to Plaintiff filing the Complaint on May 25, 2021. (Defs.' Mem. 5.) In addition, Defendants argue that Plaintiff has not demonstrated circumstances to warrant equitable tolling because he has not demonstrated that he pursued his rights diligently after being apprised of sufficient facts to put him on notice.[4] (*Id.* at 7.)

---

[4] Defendants also argue that Plaintiff may not have a private right of action for involuntary servitude under the Thirteenth Amendment. (Defs.' Mem. 12.) However, Plaintiff's involuntary servitude claim is pled via section 1584 of the TVPRA, (Compl. ¶ 78), pursuant to which courts have recognized a private civil cause of action for involuntary servitude. *See Akhtar v. Vitamin Herbal Homeopathic Ctr. Inc.*, No. 19-CV-1422, 2021 WL 7186030, at *5 (E.D.N.Y. Apr. 30, 2021) ("Section 1584 of the TVPRA imposes liability on anyone who 'knowingly and willfully holds to involuntary servitude . . . any other person for any term, or brings within the United States any person so held.'" (alteration in original)); *Manliguez v. Joseph*, 226 F. Supp. 2d 377, 384 (E.D.N.Y. 2002) (recognizing that a private civil cause of action for involuntary servitude is "consistent with the underlying legislative purpose of section 1584 because it would provide a victim with a direct and efficient means of protecting his or her rights and deter potential offenders from engaging in behavior that the statute was designed to prohibit"); *see also Oluoch v. Orina*, 101 F. Supp. 3d 325, 329 (S.D.N.Y. 2015).

Plaintiff argues that his TVPRA claims are not time barred because his claims continued to "accrue[] when he returned to the United States in 2017 and went to visit the [I]ndividual [D]efendants to ask them for his wages." (Pl.'s Opp'n 6.)  In addition, Plaintiff argues that his TVPRA claims should be equitably tolled because his low wage employment in Suriname, the threats of violence he received from Defendants, and tax debt are all extraordinary circumstances that warrant tolling of the statute of limitations.  (*Id*. at 7–8.)

"The Trafficking Victims Protection Act [("TVPA")] was enacted in 2000, and the amendment creating its civil cause of action (part of the TVPRA), codified at 18 U.S.C. § 1595, was enacted only in December of 2003 and amended in December of 2008." *Velez v. Sanchez*, 693 F.3d 308, 324 (2d Cir. 2012) (citing Pub. L. No. 108–193, § 4(a)(4), 117 Stat. at 2877; Pub. L. No. 110–457, § 221, 122 Stat. 5044, 5067 (2008)).  Congress enacted the TVPA to "combat trafficking in persons, a contemporary manifestation of slavery whose victims are predominantly women and children, to ensure just and effective punishment of traffickers, and to protect their victims."  Pub. L. No. 106-386, § 102, 114 Stat. 1464 (2000); *United States v. Thompson*, 896 F.3d 155, 167 (2d Cir. 2018); *see Oluoch v. Orina*, 101 F. Supp. 3d 325, 329 (S.D.N.Y. 2015) ("[By enacting the TVPA,] Congress made it a federal crime to traffic and hold a person in involuntary servitude." (citing 18 U.S.C. §§ 1584–93)).  When the TVPA was enacted in 2000 it was subject to a default four-year limitations period.  *Oluoch*, 101 F. Supp. 3d at 329.  "However, in 2008, Congress amended the TVPRA to include a ten year statute of limitations." *Id* (citing *Cruz v. Maypa*, 773 F.3d 138, 143–44 (4th Cir. 2014)).  "A cause of action accrues when the wrongful conduct occurs (or when the last element of the cause of action occurs)." *Wang v. Enlander*, No. 17-CV-4932, 2018 WL 1276854, at *3 (S.D.N.Y. Mar. 6, 2018) (citing *City Store Gates Mfg. Corp. v. Empire Rolling Steel Gates Corp.*, 979 N.Y.S.2d 606, 607 (App.

Div. 2014)).  In addition, "[t]he limitations period may be tolled or extended under principles of equitable tolling." *Id.*

"Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Watson v. United States*, 865 F.3d 123, 132 (2d Cir. 2017) (quoting *Mottahedeh v. United States*, 794 F.3d 347, 352 (2d Cir. 2015)); *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 157 (2d Cir. 2012) (noting that a showing of reasonable diligence throughout the period a plaintiff seeks to toll and that some extraordinary circumstance prevented a plaintiff from filing his action in a timely manner are prerequisites for equitable tolling (quoting *Corcoran v. N.Y. Power Auth.*, 202 F.3d 530, 543 (2d Cir. 1999))); *see Wang*, 2018 WL 1276854, at *3 ("To satisfy the diligence requirement in the first element, a plaintiff must 'demonstrate that [she] did not discover [her human trafficking] cause of action — and could not have discovered it with due diligence — until less than ten years before bringing suit.'" (alterations in original) (quoting *Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 800 (2d Cir. 2014).)).  "Equitable tolling is a rare remedy to be applied in unusual circumstances, not a cure-all for an entirely common state of affairs." *Watson*, 865 F.3d at 133 (quoting *Wallace v. Kato*, 549 U.S. 384, 396 (2007)); *McPartlan-Hurson v. Westchester Cmty. Coll.*, 804 F. App'x 41, 43–44 (2d Cir. 2020) (explaining that equitable tolling of exhaustion time may apply, but only "in rare and exceptional circumstances, in which a party is prevented in some extraordinary way from exercising his rights" (quoting *Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003))); *Berrios v. Henri*, No. 18-CV-4194, 2021 WL 6197052, at *3 (E.D.N.Y. Dec. 30, 2021) (same).

Plaintiff alleges "he was employed at A&N Fish Market between 2003–2013," (Compl. ¶ 72), and during that employment, "Defendants knowingly recruited, transported, and harbored [him] so as to obtain his labor and services by threats of serious harm, scheme or pattern of behavior and/or abuse of legal process," and in violation of the TVPRA, (Compl. ¶ 62). The last incident of alleged forced labor, trafficking, and involuntary servitude occurred in 2013 at A&N Fish Market. *See Wang*, 2018 WL 1276854, at *3. Thus, Plaintiff's Complaint, filed in May of 2021, is timely as it was filed within ten years of the alleged conduct.

###### ii. Forced labor, trafficking, and involuntary servitude claims

Defendants argue that Plaintiff has failed to plead actionable forced labor, trafficking, or involuntary servitude claims, pursuant to section 1589, section 1590, or the Thirteenth Amendment. (Defs.' Mem 8, 10, 12.) In support, Defendants state that section 1589 provides four discrete prohibited means through which an individual can obtain the labor or service of a person and Plaintiff fails to allege any of the four prohibited means in regard to Plaintiff's employment at A&N Fish Market, nor does Plaintiff allege that he was forced to go to Suriname to work at Goldfish Import & Export "by physical force, restraint, threat of harm to himself, threat of harm to another, by threat of abuse of law or legal process, or by means of a scheme that if he did not work in Suriname himself or someone else would suffer serious harm or physical restraint." (*Id*. at 8–10.) In addition, Defendants argue that Plaintiff's claim for trafficking under section 1590 fails for similar reasons. Defendants argue that: (1) Plaintiff makes a "conclusory statement" that he was trafficked, which mirrors the statutory language of section 1590, (*id*. at 10–11); (2) "Plaintiff has failed to assert how his labor at Goldfish [Import & Export] was forced labor or how he was induced by threats of serious harm, abuse of process or any other means in violation of the TVPRA," (*id*. at 11); and (3) Plaintiff "fails to assert any

basis that Plaintiff's return to Suriname was anything other than voluntary," (*id*. at 10). Defendants also argue that Plaintiff's Thirteenth Amendment claim for involuntary servitude relating to his employment in Suriname is not actionable because laws of the United States cannot be applied extraterritoriality and Plaintiff has failed to set forth facts that he was forced to perform labor in Suriname.  (*Id*. at 13; Defs.' Reply 6.)

Plaintiff argues that he has adequately alleged forced labor and trafficking claims under the TVPRA because Defendants used threats of force, violence, and serious harm to obtain his labor for free at A&N Fish Market and Goldfish Import & Export.  (Pl.'s Opp'n 8, 10.)  In support, Plaintiff claims that the financial harm he faced in Suriname constituted a serious harm within the meaning of the TVPRA to support a claim under section 1589.  (*Id*. at 10.)  Plaintiff also states that by locking him up in the store at night to clean and confiscating his passport, Defendants "held him hostage for years," which constitutes a serious harm within the meaning of section 1589.  (*Id*.)  Moreover, Plaintiff claims that the fear he experienced after watching Defendants beat up one of their tenants was a scheme that caused him to believe that he would suffer serious harm or physical restraint if he did not continue to work for Defendants.  (*Id*.)  In addition, Plaintiff argues that he has sufficiently pled a trafficking claim under section 1590 because Defendants knowingly recruited him to work in Suriname, confiscated his passport, and threatened him with physical harm.  (*Id*. at 12.)  Further, Plaintiff claims that his Thirteenth Amendment claim for involuntary servitude is appropriately pled pursuant to section 1584 of the TVPRA, which has extraterritorial effect that allows him to pursue a claim for conduct that occurred outside of the United States.  (*Id*. at 15.)

### 1. Plaintiff sufficiently alleges a forced labor claim

Civil liability for forced labor under 18 U.S.C. § 1589 requires a finding by a preponderance of the evidence that the defendant "knowingly provide[d] or obtain[ed] the labor or services of a person" through one of the following prohibited means:

> (1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person; (2) by means of serious harm or threats of serious harm to that person or another person; (3) by means of the abuse or threatened abuse of law or legal process; or (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint.

18 U.S.C § 1589(a); *Adia v. Grandeur Mgmt., Inc*., 933 F.3d 89, 92–93 (2d Cir. 2019).

"[S]erious harm" means "any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious . . . to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm." *Adia*, 933 F.3d at 93 (alterations in original) (quoting 18 U.S.C. § 1589(c)(2)); *see also Aguirre v. Best Care Agency, Inc*., 961 F. Supp. 2d 427, 443 (E.D.N.Y. 2013) ("'Serious harm' includes 'threats of any consequences, whether physical or non-physical, that are sufficient under all of the surrounding circumstances to compel or coerce a reasonable person in the same situation to provide or to continue providing labor or services.'"). "A scheme, plan or pattern violates Section 1589 where it is intended to cause a person to believe that, if she did not perform such labor or services, she or another individual would suffer serious harm." *Guobadia v. Irowa*, 103 F. Supp. 3d 325, 334 (E.D.N.Y. 2015).

Plaintiff has alleged sufficient facts to support a forced labor claim. Plaintiff alleges that he worked for Defendants for several years without pay. (*Id*. ¶ 20.) Defendants confiscated his passport, green card, and social security card and locked him in A&F Fish Market's boiler room

at night so he could not leave.  (*Id*. ¶¶ 18, 22–25, 30.)  In addition, after Defendants moved

Plaintiff to Suriname, and continued to hold his passport "hostage," they told Plaintiff that he

would get in trouble with Customs and Border Patrol if he did not say that he had given

Defendants permission to hold his passport.  (*Id*. ¶ 38.)  Further, while in Suriname, Plaintiff

discovered that Defendants accrued approximately the equivalent of $100,000 in debt in his

name while using his personal identifying information, which left him in financial ruin and

unable to afford to return to the United States.  (*Id*. ¶¶ 42–46.)  Construing the facts in the light

most favorable to Plaintiff, the Court finds that these allegations are sufficient to demonstrate

that Defendants obtained Plaintiff's labor by physical restraint and threats of serious harm.  *See*

*Paguirigan v. Prompt Nursing Emp. Agency LLC*, 286 F. Supp. 3d 430, 438 (E.D.N.Y. 2017)

(recognizing that the threat of financial harm constitutes serious harm within the meaning of the

TVRPA and determining that allegations of such a severe financial burden are more than enough

to rise to the level of harm necessary to state a TVPRA claim); *Stein v. World-Wide Plumbing*

*Supply Inc*., 71 F. Supp. 3d 320, 329 (E.D.N.Y. 2014) (finding that allegations that the

defendants "forced [the plaintiff] to work as a monitor over workers at the [defendant's

business], that she was not compensated for this labor and that they benefited from her labor . . .

are enough for [the] plaintiff's fifth cause of action for forced labor to survive [a motion to

dismiss]"); *United States v. Rivera*, No. 09-CR-619, 2012 WL 2339318, at *5 (E.D.N.Y. June

19, 2012) ("The threat of being forced to leave the United States can constitute serious harm to

an immigrant within the meaning of [§ 1589].");  *Nunag–Tanedo v. E. Baton Rouge Parish Sch.*

*Bd*., 790 F. Supp. 2d 1134, 1144–46 (C.D. Cal. 2011) (holding that the plaintiffs sufficiently

alleged a section 1589 claim where plaintiffs alleged that defendants "intentionally manipulated

the situation so that [the plaintiffs] would feel compelled to remain and would obey all of

[d]efendants' demands"); *see also Franco v. Diaz*, 51 F. Supp. 3d 235, 247 (E.D.N.Y. 2014) (

"The TVPRA does not require that [the] plaintiff[] be kept under literal lock and key.  Rather, it

was enacted as a rejection of case law that 'limited the definition of involuntary servitude to

"physical" or "legal" coercion,' and was intended to 'reach cases in which persons are held in a

condition of servitude through nonviolent coercion.'" (quoting *United States v. Dann*, 652 F.3d

1160, 1170 (9th Cir. 2011))); *Aguirre*, 961 F. Supp. 2d at 444 (stating that "[t]he threat of

deportation alone may support a claim for forced labor" under section 1589); *Nunag–Tanedo*,

790 F. Supp. 2d at 1146 (holding that the threat of deportation constitutes "abuse of legal

process" within the meaning of Section 1589 since the objective is to intimidate or coerce the

victim into forced labor).

### 2.    Plaintiff sufficiently alleges a trafficking claim

Section 1590 provides that anyone who "knowingly recruits, harbors, transports,

provides, or obtains by any means, any person for labor or services in violation of" the statutes

prohibiting slavery, forced labor or involuntary servitude, is guilty of trafficking.  18 U.S.C. §

1590(a); *Adia*, 933 F.3d at 94 (same); *see also Shukla v. Sharma*, No. 07-CV-2972, 2012 WL

481796, at *5 (E.D.N.Y. Feb. 14, 2012) ("An individual has committed trafficking, in violation

of 18 U.S.C. § 1590, where that person 'knowingly recruits, harbors, transports, provides, or

obtains by any means, any person for labor or services [for the purpose of forced labor or

involuntary servitude].'" (alteration in original) (quoting *Samirah v. Sabhnani*, 772 F. Supp. 2d

437, 448 (E.D.N.Y. 2011))).

Plaintiff has pled sufficient facts to support a trafficking claim.  Plaintiff alleges that

when he was working for Defendants in New York, they recruited him to work for them at

Goldfish Import & Export in Suriname "to manage the store, and would be provided with

lodging." (Compl. ¶ 34.) Plaintiff further alleges that Defendants confiscated his passport while he was in Suriname, and later told him that he would get in trouble with Customs and Border Control if he returned to the United States and if he did not tell TSA agents that Khelawan had permission to have his passport. (Compl. ¶¶ 37–38.) Combining these factual allegations with the facts alleged in violation of section 1589(a) described above, and construing them in the light most favorable to Plaintiff, Plaintiff has stated a claim under section 1590(a). *Franco*, 51 F. Supp. 3d at 247 (finding that the plaintiff stated a claim under section 1590 where she alleged that she was coerced into working by threats of deportation if her work was not satisfactory and that defendants recruited her to work in the United States by arranging for her visa, paying her expenses, and providing her with housing after her arrival); *see also Adia*, 933 F.3d at 94 ("Section 1590 employs the disjunctive "or" in delineating the ways in which a defendant can violate the statute. Therefore, if a defendant violates section 1589, he also violates section 1590 if he recruited the person to perform forced labor.").

### 3.   Plaintiff sufficiently alleges an involuntary servitude claim

Section 1584 of the TVPRA imposes liability on anyone who "knowingly and willfully holds to involuntary servitude . . . any other person for any term." *See United States v. Kozminski*, 487 U.S. 931, 944 (1988) (quoting 18 U.S.C. § 1584); *Akhtar v. Vitamin Herbal Homeopathic Ctr. Inc.*, No. 19-CV-1422, 2021 WL 7186030, at *5 (E.D.N.Y. Apr. 30, 2021) (citation omitted)). Section 1584 is violated by the creation of "a condition of servitude in which the victim is forced to work for the defendant by the use or threat of physical restraint or physical injury, or by the use or threat of coercion through law or the legal process." *Id.* (quoting *McGarry v. Pallito*, 687 F.3d 505, 511 (2d Cir. 2012)). The Second Circuit clarified that labor compelled through the threat of physical coercion is actionable under section 1584, but labor compelled merely by threat of negative consequences is not actionable under section 1584.

16

*Walia v. Veritas Healthcare Sols., L.L.C*., No. 13-CV-6935, 2015 WL 4743542, at *4 (S.D.N.Y. Aug. 11, 2015) (recognizing that the threat of deportation may come close to the line, but still leaves the employee with a choice, so therefore is not within the purview of section 1584 (quoting *United States v. Shackney*, 333 F.2d 475, 486–87 (2d Cir. 1964))).

Plaintiff has plausibly alleged facts to support an involuntary servitude claim. Plaintiff alleges that Defendants forced him to work twelve to fifteen hour days for seven days without wages and locked Plaintiff in the store at night to clean. (*Id.* ¶¶ 16–18, 20.) In addition, Plaintiff alleges that Defendants "forced [him] to work for them under threats of psychological and legal coercion manifested in the confiscation of his passport and threats of harm that would result should Plaintiff ask for his passport[ or] wages owed." (Compl. ¶ 80.) Defendants' threats and confiscation of Plaintiff's passport with the threat of legal retribution is sufficient to state a claim for involuntary servitude. *See McGarry*, 687 F.3d at 511–12 (finding that detainee stated an involuntary servitude claim based on the defendants' threats to send him to "the hole" if he refused to work and separately based on the defendants' coercion through legal process by threatening him with disciplinary reports, which are alleged to be taken into consideration when making recommendations for a release date); *Oak-Jin Oh v. Soo Bok Choi*, No. 11-CV-3764, 2016 WL 11430442, at *6 (E.D.N.Y. Feb. 29, 2016) ("[The p]laintiff's allegations that [the] defendants forced her to work and threatened her with violence and that [the defendants] knowingly benefitted from her labor is sufficient to state a claim under section 1584."); *Walia*, 2015 WL 4743542, at *4 (finding that the defendant's threats to withhold the plaintiff's wages and terminate his H-1B visa, in combination with the plaintiff's allegations that he was "threatened," "mental[ly] tortured" and "stalked and under constant threat of [his] life" was enough to survive a motion to dismiss); *Manliguez v. Joseph*, 226 F. Supp. 2d 377, 384

(E.D.N.Y. 2002) (finding that the plaintiff stated a claim for involuntary servitude where she alleged that the defendants locked her inside their apartment and forced her to work over eighteen hours per day, not including the overnight care she was required to provide to their youngest daughter, denied her any extended periods of rest, confiscated her passport, prohibited her from communicating with people outside their immediate family, fed her stale leftovers, denied her the most rudimentary personal hygiene items); *see also McGarry*, 687 F.3d at 511 ("[T]he Supreme Court defined involuntary servitude as 'a condition of servitude in which the victim is forced to work for the defendant by the use or threat of physical restraint or physical injury, or by the use or threat of coercion through law or the legal process.'" (quoting *Kozminski*, 487 U.S. at 952)).

Accordingly, the Court denies Defendants' motion to dismiss Plaintiff's forced labor, trafficking, and involuntary servitude claims.

### c. Plaintiff's quasi-contract claim is untimely

Defendants argue first, that Plaintiff's quantum meruit and unjust enrichment claims are barred by applicable statutes of limitation and equitable tolling does not apply.  (Defs.' Mem 13–14, 16.)  Second, Defendants argue that Plaintiff cannot assert claims under New York common law for alleged conduct related to his employment at Goldfish Import & Export in Suriname. (*Id*. at 15–16.)  In support, Defendants claim that applying New York's choice of law principles, from 2013–2016 Plaintiff was employed in Suriname by a company in Suriname and Suriname would have a greater interest in enforcing its tax rules and/or seeking to govern issues arising from an employment relationship between a citizen of Suriname with a Suriname corporation. (*Id*.)

18

Plaintiff argues that his claims for quantum meruit and unjust enrichment are (1) timely pursuant to the continuing wrong doctrine, and (2) tolled by General Obligations Law 17-101 because Khelawan purportedly acknowledged a debt to Plaintiff.  (Pl.'s Opp'n 16–17.)  In support, Plaintiff alleges that in 2017 he was threatened with physical violence by Defendants for asking for his wages and in 2021 he discovered that he owes taxes for a business Defendants opened in his name.  (*Id*.)  Plaintiff argues that these acts constitute a separate cause of action that continues that statutory period.  (*Id*.)  In addition, Plaintiff argues that his claim related to conduct that occurred in Suriname is timely because in 2017, when he returned to the United States, Defendants threatened him with physical violence for asking for wages they owed him and to clear the debt incurred in Suriname under his name.  (*Id*. at 17.)

 Under New York law, quantum meruit and unjust enrichment claims "are analyzed together as a single quasi-contract claim."  *Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd*., 991 F.3d 361, 365 n.1 (2d Cir. 2021); *see also Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp*., 418 F.3d 168, 175 (2d Cir. 2005) ("[Q]uantum meruit and unjust enrichment are not separate causes of action. . . . [U]njust enrichment is a required element for an implied-in-law, or quasi contract, and quantum meruit . . . is one measure of liability for the breach of such a contract." (quoting *Newman & Schwartz v. Asplundh Tree Expert Co., Inc*., 102 F.3d 660, 663 (2d Cir. 1996))); *Snyder v. Bronfman*, 893 N.Y.S.2d 800, 802 (2009) ("Unjust enrichment and quantum meruit are, in this context, essentially identical claims, and both are claims under 'a contract implied . . . in law to pay reasonable compensation.'" (quoting N.Y. General Obligations Law 5-701(a)(10))).  The statute of limitations for a quantum meruit/unjust enrichment claim is six years.  N.Y.C.P.L.R § 213; *Cohen v. S.A.C. Trading Corp*., 711 F.3d 353, 364 (2d Cir. 2013) (recognizing six-year limitations period for unjust enrichment claims); *Lama v. Malik*, 192 F.

Supp. 3d 313, 320 & n.5 (E.D.N.Y. 2016) (recognizing that common law claims for unjust

enrichment/quantum meruit are subject to a six year statute of limitations (first citing

*Williams-Guillaume v. Bank of Am., N.A.*, 14 N.Y.S.3d 466, 469 (App. Div. 2015); and then

citing *Eisen v. Feder*, 763 N.Y.S.2d 279, 280 (App. Div. 2003))).  However, Section 17–101 of

New York's General Obligations Law ("section 17–101") codifies the common law rule that an

acknowledgement of a debt is sufficient to refresh the obligation, thereby restarting the running

of the statute of limitations.  *See Bainbridge Fund Ltd. v. Republic of Argentina*, 37 F.4th 847,

852 (2d Cir. 2022) ("Under New York law, a debtor's acknowledgement of indebtedness may

toll the statute of limitations for claims on that debt."); *Faulkner v. Arista Recs. LLC*, 797 F.

Supp. 2d 299, 312 (S.D.N.Y. 2011).

        Plaintiff's quantum meruit/unjust enrichment claim is time-barred.  Plaintiff alleges that

he began working for Defendants in 2003 at A&N Fish Market, incorporated in New York, and

continued to work for Defendants, without pay and with threats of coercion, at A&N Fish Market

until 2013.[5]  (Compl. ¶¶ 6, 9, 13, 36.)  Plaintiff filed this action in May of 2021, two years after

---

     [5]  Defendants argue that the Court does not have proper jurisdiction over Plaintiff's claim related to his employment in Suriname because New York law does not apply to claims that occurred outside of the United States as there is a presumption against laws being applied extraterritorially.  (Defs.' Mem. 14–15.)  The Court agrees.  Any quantum meruit/unjust enrichment claim after 2013 would be premised on conduct that occurred in Suriname while Plaintiff was a resident of Suriname, worked in Suriname, and thus subject to the laws of Suriname.  (Compl. ¶¶ 34, 36.)  Given that there is an established presumption that New York law does not apply extraterritorially, the Court declines to exercise its jurisdiction over common law claims resulting from conduct that allegedly occurred in Suriname.  *See Glob. Reinsurance Corp. U.S. Branch v. Equitas Ltd.*, 18 N.Y.3d 722, 735 (2012) ("The established presumption is, of course, against the extraterritorial operation of New York law." (citing N.Y. Stat § 149)); *Goshen v. Mut. Life Ins. Co.*, 730 N.Y.S.2d 46, 47 (App. Div. 2001) ("[E]very [New York] statute in general terms is construed as having no extraterritorial effect." (citing N.Y. Stat § 149)), *aff'd*, 98 N.Y.2d 314 (2002); *S. H. v. Diocese of Brooklyn*, 167 N.Y.S.3d 171, 177 (App. Div. 2022) ("New York recognizes the general rule that a statute is presumed to apply only within the [s]tate." (alteration in original)); *see also World Book, Inc. v. Int'l Bus. Machines*

the limitations period ended in 2019.[6]  *See Lama*, 192 F. Supp. 3d at 320; *see also Cohen*, 711

F.3d at 364 ("[T]he six-year limitations period for unjust enrichment accrues 'upon the

occurrence of the wrongful act giving rise to a duty of restitution and not from the time the facts

constituting the fraud are discovered.'" (quoting *Coombs v. Jervier*, 906 N.Y.S.2d 267 (App.

Div. 2010))).

     Accordingly, the Court grants Defendants' motion to dismiss Plaintiff's quantum

meruit/unjust enrichment claim.

     **d.  Plaintiff's fraud claim is time-barred and insufficiently pleaded**

     Defendants argue that Plaintiff's fraud claims should be dismissed because they are

barred by the applicable statute of limitations and are not pled with particularity.  (Def.'s Mem

16.)  First, Defendants assert that Plaintiff's fraud claims expired in 2019 because his

employment at A&N Fish Market ended prior to 2013 and fraud claims must be brought within

six years of the purported fraud or two years from when Plaintiff could have discovered the

fraud.  (*See id.* at 17.)  Defendants argue that "it would have been readily apparent to Plaintiff at

the time that his working conditions were not as allegedly represented or that he was allegedly

---

*Corp.*, 354 F. Supp. 2d 451, 455 (S.D.N.Y. 2005) (finding that the plaintiff's New York common law claim was subject to limitations on extraterritorial application); *S. H.*, 167 N.Y.S.3d at 177 (finding that CPLR § 214-g did not apply extraterritorially where the plaintiff's alleged injury occurred outside of New York and was not a New York resident); *Rodriguez v. KGA Inc.*, 64 N.Y.S.3d 11, 13 (App. Div. 2017) (dismissing the plaintiffs' labor claims based on labor performed exclusively outside New York because the relevant New York statutes did not expressly apply on an extraterritorial basis).

  [6]  Plaintiff's allegation that "[s]ometime in February 2008," Khelawan wrote down on paper "I owe [Plaintiff] $3,000.  I will pay to [Plaintiff] $3,000 next week," extends the limitations period to 2014.  (Compl. ¶ 28.)  In addition, Plaintiff does not allege when Khelawan "acknowledged that she owed wages to Plaintiff in the amount of approximately $200,000 for his employment at A&N Fish Market between 2003–2012." (*Id.* at ¶ 29.)  Construing the facts in Plaintiff's favor, at most, the limitations period was extended to 2018 based on this allegation.

improperly induced to go back to Suriname in 2013." (*Id*.)  Second, Defendants argue that Plaintiff has failed to properly plead fraud because he "fails to identify any specific statements made to him, identify which Defendant made such statement, identify when or where such statement was made, or explain how such statement was fraudulent." (*Id.* at 18.)

Plaintiff claims that "it was not until 2021 that [P]laintiff discovered that he allegedly owes sales taxes for a business . . . that the [D]efendants fraudulently used his [personal identifying information] to open." (Pl.'s Opp'n 17–18.)  In addition, Plaintiff argues that he pled his fraud claims with specificity because he alleges the circumstances constituting fraud perpetuated against him, including that Defendants "confiscated his passport, green card and social security card when he commenced employment in 2003[and] told him he would be paid wages for working at A&N [Fish Market] and Goldfish [Import & Export], he was forced to sign documents in Dutch by the [I]ndividual [D]efendant Angela Khelawan, [and he] relied on [D]efendants['] statement and worked for them[,]  . . .  and suffered damages, namely debts incurred in Suriname and United States under his name." (*Id*.)

"[A]n action based upon fraud . . . must be commenced . . . six years from the date the cause of action accrued or two years from the time the plaintiff . . . discovered the fraud, or could with reasonable diligence have discovered it."  N.Y. C.P.L.R.§ 213(8); *Koral v. Saunder*s, 36 F.4th 400, 408 (2d Cir. 2022) (same) (citing *Sargiss v. Magarelli*, 12 N.Y.3d 527, 532 (2009)); *Williams v. Long Beach Mortg. Co*., No. 19-CV-970, 2020 WL 4735354, at *8 (S.D.N.Y. Aug. 14, 2020) ("Under New York law, a fraud claim is subject to a six (6) year statute of limitations." (citing N.Y. C.P.L.R. § 213(8)).

"[I]n conjunction with the facial plausibility standard of Rule 12(b)(6)," pleadings for common law fraud claims "must satisfy the heightened pleading standard set forth in Rule 9(b)"

of the Federal Rules of Civil Procedure. *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec.*

*L.L.C.*, 797 F.3d 160, 171 (2d Cir. 2015); *Turk v. Rubbermaid Inc.*, No. 21-CV-270, 2022 WL

836894, at *4 (S.D.N.Y. Mar. 21, 2022) ("[F]raud claims — including common law fraud claims

— are subject to the heightened pleading standard set forth in Rule 9(b).").  "Rule 9(b) requires

that '[i]n alleging fraud or mistake, a party must state with particularity the circumstances

constituting fraud or mistake.'" *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 25–26

(2d Cir. 2016) (alteration in original) (quoting Fed. R. Civ. P. 9(b)).  "[T]he particularity

pleading requirements of [Rule 9(b)] . . . 'require[] that the plaintiff (1) detail the statements (or

omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and

when the statements (or omissions) were made, and (4) explain why the statements (or

omissions) are fraudulent.'" *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395,

402–03 (2d Cir. 2015) (quoting *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of

N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004)).  "Put another way, Rule 9(b) 'requires that a plaintiff set

forth the who, what, when, where[,] and how of the alleged fraud.'" *Thar Process, Inc. v. Sound

Wellness, LLC*, No. 21-CV-422, 2022 WL 170608, at *6 (W.D.N.Y. Jan. 18, 2022) (quoting

*Tradeshift, Inc. v. Smucker Servs. Co.*, No. 20-CV-3661, 2021 WL 4463109, at *4 (S.D.N.Y.

Sept. 29, 2021)).  Rule 9(b) also states that "[m]alice, intent, knowledge, and other conditions of

a person's mind may be alleged generally." *Loreley Fin. (Jersey) No. 3 Ltd.*, 797 F.3d at 171

(quoting Fed. R. Civ. P. 9(b)).  "But because 'we must not mistake the relaxation of Rule 9(b)'s

specificity requirement regarding condition of mind for a license to base claims of fraud on

speculation and conclusory allegations[,] . . . [the] plaintiffs must allege facts that give rise to a

strong inference of fraudulent intent.'" *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir.

2006) (first two alterations in original) (quoting *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 52 (2d

Cir. 1995)); *see also Loreley Fin. (Jersey) No. 3 Ltd.*, 797 F.3d at 171 ("[T]hough mental states

may be pleaded 'generally,' the [p]laintiffs must nonetheless allege facts 'that give rise to a

strong inference of fraudulent intent.'" (quoting *Lerner*, 459 F.3d at 290–91)).  "A 'strong

inference of fraudulent intent' may be established either '(a) by alleging facts to show that

defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that

constitute strong circumstantial evidence of conscious misbehavior or recklessness.'"  *Honeyman*

*v. Hoyt (In re Carter-Wallace, Inc. Sec. Litig.)*, 220 F.3d 36, 39 (2d Cir. 2000) (quoting *Shields*

*v. Citytrust Bancorp*, 25 F.3d 1124, 1128 (2d Cir. 1994)).

Plaintiff alleges that Defendants "misrepresented to [him] the conditions of [his]

employment in the United States in order to induce him to continue working at A&N Fish

Market . . . [and induced him] to travel to Suriname."  (Compl.  ¶¶ 100–102.)  Plaintiff began

working for Defendants in 2003 and moved to Suriname to work in 2013.  (*Id*. ¶¶ 12–19, 36.)  At

the latest, Plaintiff's claims based on his employment conditions expired in 2019, six years after

he stopped working at A&N Fish Market and was induced to travel to Suriname and are

therefore untimely.[7]  *See Coleman v. Wells Fargo & Co*., 4 N.Y.S.3d 93, 94 (App. Div. 2015)

---

[7]  Plaintiff alleges that sometime between 2013 and 2016, while managing Goldfish
Import & Export in Suriname, Individual Defendants required him to sign documents in Dutch.
(*See* Compl. ¶¶ 34–36.)  While in Suriname, Plaintiff learned from Suriname authorities that the
Dutch documents were incorporation documents for Goldfish Import & Export that made him
responsible for the debts and liabilities of the business.  (*Id*. ¶¶ 39–43.)  The Court declines to
extend its jurisdiction to any fraud claims related to the debts Plaintiff allegedly incurred in
Suriname based on Defendants' conduct because at the time Plaintiff was a Suriname resident
(given that he was a citizen of Suriname and lived and worked there from 2013–2017), the
documents were executed in Suriname, the bulk of the witnesses and evidence that Defendants
would need to defend the action are located in Suriname, the action would be governed by
Suriname law, and the fraud otherwise has no substantial connection to New York.  *See Glob.*
*Reinsurance Corp. U.S. Branch*, 18 N.Y.3d at 735; *Blueye Navigation, Inc. v. Den Norske Bank*,
658 N.Y.S.2d 9, 10 (App. Div. 1997) (granting motion to dismiss action on forum non
conveniens grounds because although one or more of the plaintiffs reside in New York, "[a]ll of

(stating that "a cause of action based upon fraud must be commenced within six years from the time of the fraud, or within two years from the time the fraud was discovered, or with reasonable diligence could have been discovered, whichever is longer" and that it "accrues, for statute of limitations purposes, at the time the plaintiff 'possesses knowledge of facts from which the fraud could have been discovered with reasonable diligence'" (quoting *Town of Poughkeepsie v. Espie*, 840 N.Y.S.2d 600, 603 (App. Div. 2007))).

In addition, Plaintiff's fraud allegations for misrepresentations that occurred in 2013 are conclusory. Plaintiff alleges that "[o]n or about 2013, [D]efendants induced Plaintiff to go back to Suriname knowing of and intending that their misrepresentations would induce Plaintiff to travel to Suriname in order to receive the promised employment." (Compl. ¶ 102.) Plaintiff does not allege who made the alleged misrepresentation about his employment in Suriname, and even if the Court were to assume that Plaintiff is referring to the Individual Defendants, Plaintiff has not alleged what those misrepresentations were. Therefore, he has not pled any fraud claim

---

the defendants are citizens and residents of a foreign jurisdiction, most of the business dealings in connection with the subject agreement were conducted in London, the agreement itself was executed in London, the parties were to perform in London, the bulk of the witnesses and evidence that defendants would need to defend the action are located in London, the action is governed by English law," and the action otherwise had no substantial connection to New York); *Silver v. Great Am. Ins. Co.*, 29 N.Y.2d 356, 361 (1972) ("Although such residence is, of course, an important factor to be considered, forum non conveniens relief should be granted when it plainly appears that New York is an inconvenient forum and that another is available which will best serve the ends of justice and the convenience of the parties."); *see also S. H.*, 167 N.Y.S.3d at 177 (finding that CPLR § 214-g did not apply extraterritorially where the plaintiff's alleged injury occurred outside of New York and the plaintiff was a not a New York resident); *St. Francis Holdings, LLC v. MMP Cap., Inc.*, No. 20-CV-4636, 2022 WL 991980, at *8 (E.D.N.Y. Mar. 31, 2022) (recognizing that claims of fraud are governed by conduct-regulating rules and the jurisdiction where the fraud took place has the greatest interest in regulating behavior within its borders).

with specificity.  *See Wang*, 2018 WL 1276854, at *9 (dismissing fraud claims because Plaintiff did not allege that the defendant made any misstatements to induce Plaintiff to work for him).

Accordingly, the Court grants Defendants' motion to dismiss Plaintiff's fraud claims.

### e.   Plaintiff's false imprisonment claim is time-barred

Defendants argue that Plaintiff's false imprisonment claim must be dismissed because it is time barred by the relevant one-year statute of limitations.  (Defs.' Mem. 19.)  First, Defendants claim that Plaintiff asserts that he was subjected to false imprisonment between 2003 and 2017, which is more than one year prior to the filing of the Complaint.  (*Id*.)  "Plaintiff purportedly learning of taxes [] owed has nothing to do with Plaintiff's purported false imprisonment . . . claim[].  Rather, such claim[] accrued and w[as] actionable when Plaintiff was purportedly falsely imprisoned . . . by Defendants."  (Defs.' Reply 9.)  Second, Defendants argue that Plaintiff's claims are not subject to equitable tolling because Plaintiff has been in New York since 2017 and has not alleged any extraordinary circumstance or any attempt to pursue his rights within the last four years.  (Defs.' Mem. 19, 21.)  Third, Defendants argue that Plaintiff's allegation relating to conduct in Suriname is not properly brought pursuant to New York law given extraterritoriality restrictions and even if New York law applies, Plaintiff has failed to plead a proper claim because Plaintiff has not alleged that he was confined or that his movement was restricted in any way in Suriname.  (*Id*. at 20.)

Plaintiff argues that his false imprisonment claim is not time barred and even if it is, it should be tolled because it was not until 2021 that Plaintiff discovered that he owes back taxes for Defendants' business.  (Pl.'s Opp'n 19.)  Plaintiff asserts that "[f]inding out that he owe[d] back taxes has caused him considerable emotional distress and [is a continuing wrong that] prevents the claim[] for false imprisonment . . . from being barred by the statute of limitations

since it is the 'final actionable event occurred within one year of the suit.'" (*Id*. (quoting *Shannon v. MTA Metro–N. R.R.*, 704 N.Y.S.2d 208 (App. Div. 2007)).) In addition, Plaintiff argues that "[D]efendants' act of locking [P]laintiff in A&N [Fish Market] at night, which he was aware of, which he did not consent to and was not privileged clearly meets all the elements of a false imprisonment claim." (*Id*. at 21.)

Under New York law, a one-year statute of limitations applies to Plaintiff's false imprisonment claims. *See* N.Y. C.P.L.R. § 215 ("The following actions shall be commenced within one year . . . an action to recover damages for . . . false imprisonment."); *Allen v. Antal*, 665 F. App'x 9, 13 (2d Cir. 2016) (finding that false imprisonment claim was "barred by the applicable one-year statute of limitations" pursuant to N.Y. C.P.L.R. § 215(3)).

Plaintiff's false imprisonment claim is untimely. Plaintiff alleges that Defendants "knowingly and intentionally restrained [him] through psychological and legal threats and coercion," (Compl. ¶ 112), and Plaintiff "reasonably believed that he was confined within the boundaries of United States between 2003 and 2012 and then confined within the boundaries of Suriname between 2013 and 2017 as a result of . . . Defendants' coercion and use of psychological and legal threats," (*id*. at ¶ 113). At the earliest, Plaintiff's claim accrued in 2003, when Defendants confiscated his passport. (*See id*. ¶ 25.) Even accepting Plaintiff's allegations as true and assuming that he was last confined in 2017, Plaintiff's claim accrued then, (*see id*. ¶¶ 34, 36, 47, 51), and the limitations period would have expired, at the latest, in 2018. *See Mejia v. Davis*, No. 16-CV-9706, 2018 WL 333829, at *7 (S.D.N.Y. Jan. 8, 2018) ("In New York, a state claim for false arrest accrues when a plaintiff is released from custody."); *Fahlund v. Nassau County*, 265 F. Supp. 3d 247, 255–56 (E.D.N.Y. 2017) ("N.Y. C.P.L.R. 215 states that the statute

of limitations is one year for state law claims for false imprisonment, intentional infliction of emotional distress, and malicious prosecution.").

Accordingly, the Court grants Defendants' motion to dismiss Plaintiff's false imprisonment claim.

### f.   Plaintiff's infliction of intentional emotional distress claim is insufficiently pleaded

Defendants argue that Plaintiff's infliction of emotional distress claim must be dismissed because it is time barred by the relevant one-year statute of limitations and that Plaintiff fails to sufficiently plead a claim.  (Defs.' Mem. 21–22.)  In support of their argument that the claim is time-barred, Defendants argue that Plaintiff asserts that he was subjected to infliction of emotional distress more than one year prior to the filing of the Complaint, that learning of taxes owed has nothing to do with Plaintiff's intentional infliction of emotional distress claim, and that Plaintiff's claim is not subject to equitable tolling because Plaintiff has been in New York since 2017 and has not alleged any extraordinary circumstance or any attempt to pursue his rights within the last four years.  (Defs.' Reply 9; Defs.' Mem. 21.)  In addition, Defendants argue that Plaintiff failed to plead extreme and outrageous acts by Defendants or that Defendants intended to cause severe and emotional distress, which are necessary elements of a claim for intentional infliction of emotional distress.  (Defs.' Mem. 22.)

Plaintiff argues that his infliction of emotional distress claim is not time barred and if it is, it should be tolled because it was not until 2021 that Plaintiff discovered that he owes back taxes for Defendants' business.  (Pl.'s Opp'n 19.)  In addition, Plaintiff asserts that "[D]efendants' continuous conduct between 2003–2017, including locking [] [P]laintiff in the store at night, and incurring debts in Suriname and United States under his name, and threatening

to break his arms and legs is extreme and outrageous conduct, which has caused [Plaintiff] severe emotional distress." (*Id*. at 20.)

Under New York law, a one-year statute of limitations applies to Plaintiff's intentional infliction of emotional distress claim. *Berlin v. Jetblue Airways Corp*., 436 F. Supp. 3d 550, 565 (E.D.N.Y. 2020) ("A cause of action for the intentional infliction of emotional distress is governed by the one-year period of limitations in CPLR 215(3)." (quoting N.Y. C.P.L.R. § 215 Commentary)); *Abdulaziz v. McKinsey & Co., Inc*., No. 21-CV-2921, 2022 WL 2444925, at *3 n.1 (2d Cir. July 5, 2022) (finding that intentional infliction of emotional distress claim was "barred by New York's one-year statute of limitations for intentional torts"); *Berlin v. Jetblue Airways Corp*., 436 F. Supp. 3d 550, 565 (E.D.N.Y. 2020) ("Under New York law, a one-year statute of limitations applies to … common law tort[s], [including] . . . intentional infliction of emotional distress . . . and false imprisonment." (citing N.Y. C.P.L.R. § 215)).

Drawing all reasonable inferences in Plaintiff's favor, the Court cannot determine at this stage of the action that Plaintiff's intentional infliction of emotional distress claim is untimely. As discussed above, the limitations period related to Plaintiff's claims concerning his employment at A&N Fish Market would have expired, at the latest, in 2014.  However, in 2021, Plaintiff found out that the Internal Revenue Service (the "IRS") sent him a notice stating that he owed sales tax since 2008 for a business called Liberty Fish & Meat, located at the same premises as A&N Fish Market.  (*Id.* ¶¶ 53, 55.)  Thus, the claim concerning sales taxes in the United States, which was filed in 2021, is timely.  *Fahlund*, 265 F. Supp. 3d at 255–56 ("N.Y. C.P.L.R. 215 states that the statute of limitations is one year for state law claims for . . . intentional infliction of emotional distress.").

Drawing all inferences in Plaintiff's favor and considering Plaintiff's allegations under the totality of the circumstances, Plaintiff has stated a plausible clam for intentional infliction of emotional distress.  *See Pottie v. Atl. Packaging Grp., LLC*, No. 12-CV-773, 2012 WL 6087282, at *3 (D. Conn. Dec. 6, 2012) ("[T]he [c]ourt must consider [claims of intentional infliction of emotional distress under] the totality of the circumstances rather [tha]n each individual allegation in isolation."); *see also Shannon*, 704 N.Y.S.2d at 209 (considering detailed allegations that the defendants intentionally and maliciously engaged in a pattern of harassment, intimidation, humiliation and abuse).  Defendants were in a position of power over Plaintiff given that they were his employers, landlords, and in possession of his passport and other important legal documents.  (*See* Compl. ¶¶ 22, 36, 57); *Scollar v. City of New York*, 74 N.Y.S.3d 173, 178 (App. Div. 2018) (recognizing that a defendant's extreme and outrageous conduct can be established when it arises from the abuse of a position of power).  Plaintiff also alleges that Defendants took advantage of his illiteracy and stole his personal identifying information to commit tax fraud, making Plaintiff liable for over a decade's worth of debt.  (Compl. ¶ 57.) Plaintiff allegedly owes back taxes from 2008 for a business that he never incorporated or profited from, and was forced to work in without wages.  (*Id*. ¶ 56.)  Further, when Plaintiff reached out to the Defendants about the debt, Individual Defendants threatened him with bodily injury and harm.  (*Id*. ¶ 58.)  Defendants' conduct, in light of their power over and subjugation of Plaintiff, constitutes intentional "extreme and outrageous" conduct to support an intentional infliction of emotional distress claim.  *See Scollar*, 74 N.Y.S.3d at 178 (finding the plaintiff's allegations that "describe both (1) a deliberate and malicious campaign of harassment and intimidation and (2) an abuse of power" sufficient to state an intentional infliction of emotional distress claim for intentional infliction of emotional distress under New York law.)

Accordingly, the Court denies Defendants' motion to dismiss Plaintiff's intentional infliction of emotional distress claim.

### g.  Civil conspiracy

Defendants argue that Plaintiff's civil conspiracy claim must be dismissed because (1) Plaintiff fails to assert how such a claim is connected to an actionable tort; (2) Plaintiff fails to allege specific facts setting forth the specific elements of an agreement between two or more parties, an overt act in furtherance of the agreement, or the parties' intentional participation in furtherance of a plan or purpose; and (3) "Plaintiff's claim is also barred by applicable statute of limitations."  (Defs.' Mem 23.)

Plaintiff concedes that civil conspiracy cannot be asserted as an individual cause of action, but argues that his fraud, false imprisonment, and intentional infliction of emotional distress claims allows him to bring a claim for civil conspiracy.  (Pl.'s Opp'n 21.)  Plaintiff argues that he has sufficiently pled a civil conspiracy claim because (1) "[D]efendants were in agreement as they acted together to keep [him] imprisoned and defraud[ed] [him,] which has caused him severe emotional distress"; and (2) there were multiple overt acts committed by Defendants in furtherance of the conspiracy, "such as locking [Plaintiff] in the store at night and making him sign documents in Dutch relating to the store in Suriname, wherein he incurred debts under his name."  (*Id*. at 22.)

"Although New York does not recognize an independent cause of action for civil conspiracy, allegations of civil conspiracy are permitted 'to connect the actions of separate defendants with an otherwise actionable tort'"  *Cohen Bros. Realty Corp. v. Mapes*, 119 N.Y.S.3d 478, 482 (App. Div. 2020) (quoting *Alexander & Alexander of N.Y. v. Fritzen*, 68 N.Y.2d 968, 969 (1986)); *see In re Platinum-Beechwood Litig*., 427 F. Supp. 3d 395, 442

31

(S.D.N.Y. 2019) ("[A]ll that an allegation of conspiracy can accomplish is to connect nonactors, who otherwise might escape liability, with the acts of their co-conspirators." (quoting *Burns Jackson Miller Summit & Spitzer v. Lindner*, 452 N.Y.S.2d 80, 93-94 (App. Div. 1982), *aff'd*, 59 N.Y.2d 314 (1983))).   In addition to pleading the primary tort, a plaintiff alleging civil conspiracy must also plead the following four elements: (1) "an agreement between two or more parties"; (2) "an overt act in furtherance of the agreement"; (3) "the parties' intentional participation in the furtherance of a plan or purpose"; and (4) "resulting damage or injury." *Cohen Bros. Realty Corp.*, 119 N.Y.S.3d at 482.   Courts have rejected the "argument that the elements of the civil conspiracy must comply with the particularity requirements of Fed. R. Civ. P. 9(b)."   *Amusement Indus., Inc. v. Stern*, 693 F. Supp. 2d 327, 355 n.15 (S.D.N.Y.2010) (collecting cases).   "Moreover, when considering the sufficiency of pleadings of conspiracy, 'great leeway should be allowed the pleader, since by the nature of the conspiracy, the details may not be readily known at the time of pleading.'"   *Walia*, 2015 WL 4743542, at *9 (quoting *Maersk, Inc. v. Neewra, Inc*., 554 F.Supp.2d 424, 458 (S.D.N.Y. 2008)).

Because the Court dismisses Plaintiff's claims for fraud and false imprisonment, Plaintiff cannot state a civil conspiracy claim as to these claims.  *See Kirch v. Liberty Media Corp*., 449 F.3d 388, 401 (2d Cir. 2006) ("New York does not recognize an independent tort of conspiracy."); *Marino v. Grupo Mundial Tenedora, S.A*., 810 F. Supp. 2d 601, 610 (S.D.N.Y. 2011) ("Claims of civil conspiracy which do not allege, or which insufficiently allege, an underlying tort must be dismissed for failure to state a claim under Rule 12(b)(6)."); *see also Palmer v. City of New York*, 564 F. Supp. 3d 221, 244 (E.D.N.Y. 2021) (dismissing civil conspiracy claim where the plaintiff failed to state causes of action for any of the torts underlying the alleged conspiracy).

Plaintiff has alleged sufficient facts to support a civil conspiracy as to his intentional infliction of emotional distress claim.  Drawing all inferences in Plaintiff's favor, Defendants' role of owning and operating their businesses together is evidence that they had an agreement to make Plaintiff responsible for their business debt and intentionally inflict emotional distress.  In addition, Defendants stealing Plaintiff's personal information, then using that information and falsified documentation to file taxes in the United States, may constitute an overt act in furtherance of their agreement and intentional participation in furtherance of the plan.  (Compl. ¶ 57.)  When Plaintiff reached out to Individual Defendants about the tax debt, they threatened him with bodily injury and harm.  (*Id.* ¶ 58.)  Plaintiff now lives in fear that Defendants will further harm him and his family and Plaintiff is responsible for taxes that Defendants incurred for over a decade.  (*Id.* ¶¶ 53, 59.)   Together, these allegations are sufficient to survive a motion to dismiss.  *See Walia*, 2015 WL 4743542, at *10 (denying the defendant's motion to dismiss the plaintiff's forced labor civil conspiracy claim where the plaintiff did not perfectly set out the elements of conspiracy, but alleged a concerted plan to recruit him and obtain his labor as well as numerous overt acts in furtherance of that conspiracy, including the filing of false paperwork on the plaintiff's behalf, and recognizing that the plaintiff has limited access to the evidence that would substantiate such a claim).

Accordingly, the Court grants Defendants' motion as to Plaintiff's civil conspiracy claim for fraud and false imprisonment, but denies Defendants' motion as to Plaintiff's civil conspiracy claim for intentional infliction of emotional distress.

**h.   Leave to Amend**

Rule 15 of the Federal Rules of Civil Procedure provides that "[l]eave to amend should be 'freely give[n] . . . when justice so requires,' but 'should generally be denied in instances of

futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party[.]'" *Ladas*, 824 F.3d at 28 (second and third alterations in original) (citation omitted) (first quoting Fed. R. Civ. P. 15(a)(2); and then quoting *Burch v. Pioneer Credit Recovery, Inc.,* 551 F.3d 122, 126 (2d Cir. 2008)); *see also Kainz v. Bernstein*, 841 F. App'x 249, 253 (2d Cir. 2020) (noting that leave to amend should be freely given).

The Court grants Plaintiff leave to amend the Complaint as to his unjust enrichment, fraud, false imprisonment, and civil conspiracy claims. *See Caren v. Collins*, 696 F. App'x 19, 22 (2d Cir. 2017) ("[D]ismissals for insufficient pleadings are ordinarily with leave to replead." (quoting *Stern v. Gen. Elec. Co*., 924 F.2d 472, 477 (2d Cir. 1991)); *Woo Hee Cho v. Oquendo*, No. 16-CV-4811, 2018 WL 9945701, at *12 (E.D.N.Y. Aug. 25, 2018) ("When a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." (quoting *Hayden v. County of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999))); *see also Cotiviti, Inc. v. Deagle*, 501 F. Supp. 3d 243, 264 (S.D.N.Y. 2020) (sua sponte granting leave to file a second amended complaint where plaintiff could provide missing facts necessary to support its claims).

The amended complaint must be filed within thirty days of the date of this Memorandum and Order and will completely replace the Complaint and must stand on its own without reference to the prior complaint and must contain all of the claims Plaintiff seeks to pursue.  The amended complaint must be captioned "Amended Complaint" and bear the same docket number as this Memorandum and Order.  If Plaintiff elects not to file an amended complaint or fails to file it within thirty days of this Memorandum and Order, the Court will direct the Clerk of Court to enter judgment dismissing Plaintiff's claims for unjust enrichment, fraud, false imprisonment, and civil conspiracy for the reasons stated above.

34

### III.   Conclusion

For the reasons stated above, the Court grants Defendants' motion in part and denies it in part.  The Court (1) denies the motion as to Plaintiff's forced labor, trafficking, involuntary servitude; and intentional infliction of emotional distress claims; and (2) grants the motion as to Plaintiff's quantum meruit/unjust enrichment, fraud, and false imprisonment claims.  In addition, the Court grants Defendants' motion to dismiss Plaintiff's civil conspiracy claim for fraud and false imprisonment, but denies Defendants' motion as to Plaintiff's civil conspiracy claim for intentional infliction of emotional distress.  The Court grants Plaintiff leave to file an amended complaint within thirty days of the entry of this Memorandum and Order.

Dated:  September 24, 2022
Brooklyn, New York

SO ORDERED:


_____s/ MKB_____
MARGO K. BRODIE
United States District Judge